UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

PREMIER POOLS MANAGEMENT CORP.,
a Nevada Corporation,

        Plaintiff,

    v.

COLONY INSURANCE COMPANY, a
Virginia Corporation,

        Defendant.

No. 2:13-cv-02038-JAM-EFB

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

## I.  INTRODUCTION

Plaintiff Premier Pools Management Corp. ("Plaintiff")
brings this lawsuit against Defendant Colony Insurance Company
("Defendant") alleging that Defendant breached the parties'
insurance agreement by declining to defend Plaintiff in a lawsuit
brought against it by Premier Pools, Inc. ("PPI") in Texas state
court (the "Texas Case").  See Second Amended Complaint ("SAC"),
ECF No. 38-1.  This Court granted Defendant's first summary
judgment motion in April 2014.  ECF No. 20.  The Court reasoned
that Plaintiff was not a named insured under the parties'
insurance agreement's plain language and so Defendant had no duty
to defend in the Texas Case.  Id. at 8.  In May 2016, the Ninth
Circuit reversed.  ECF No. 27 (the "Ninth Circuit Ruling"), 649

1

Fed. Appx. 490 (9th Cir. 2016).

After the Ninth Circuit mandate issued, Plaintiff filed its SAC in August 2017 and Defendant initially moved for judgment on the pleadings in January 2018. <u>See</u> ECF Nos. 38-1 and 45. After that motion was denied without prejudice for failing to meet and confer, Plaintiff filed its motion for partial summary judgment in April 2018. ECF No. 54; ECF No. 71 ("Pl. Mem."). Plaintiff seeks summary judgment on its first claim for declaratory relief, second claim for breach of insurance contract — duty to defend, and third claim for breach of insurance contract — duty to indemnify. Pl. Mem. Defendant opposed and filed a cross-motion for summary judgment as to all of Plaintiff's claims – the three claims Plaintiff moved on and also Plaintiff's claims for breach of the implied covenant of good faith and fair dealing and its claim for punitive damages. Def. Mem., ECF No. 74. Plaintiff opposed the cross-motion. Pl. Opp., ECF No. 75. The motions were heard on June 26, 2018.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff entered into an insurance agreement with Defendant in 2010 (the "Policy"). The Pertinent policy language reads as follows:

> "We will pay those sums that insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages."

> "'Personal and advertising injury means' injury, including consequential 'bodily injury', arising out of one or more of the following offenses: ... Oral or written publication, in any manner, of material that slanders or libels a person or organization or

2

disparages a person's or organization's goods, products or services ... The use of another's advertising idea in your 'advertisement'; or Infringing upon another's copyright, trade dress or slogan in your 'advertisement.'"

"'Advertisement' means a notice that is broadcast or published to the general public or specific marketing segments about your goods, products or services for the purpose of attracting customers or supports."

See Insurance Policy No. AC800001A-2, Ex. 1 to SAC, ECF No. 38-1, at 29, 55-65; Insurance Policy No. AC800001A-3, Ex. 2 to SAC, ECF No. 38-1, at 95, 124-134. The Policy's coverage exclusions state, in relevant part:

"Knowing Violation Of Rights Of Another: 'Personal and advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury'."

"Material Published With Knowledge Of Falsity: 'Personal and advertising injury' arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity."

"Infringement Of Copyright, Patent, Trademark Or Trade Secret: 'Personal and advertising injury' arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your 'advertisement.' However, this exclusion does not apply to infringement, in your 'advertisement', of copyright, trade dress or slogan."

Id.

A.    The Texas Case – The First Trial

In July 2012, Premier Pools, Inc. ("PPI," with its principal place of business in Lewisville, Texas) filed its First Amended Petition ("FAP") in Texas state court against Plaintiff and Shan Pools, Inc. (Plaintiff's licensee incorporated in Allen, Texas), bringing claims for: (1) common law trade name infringement;

3

1    (2) common law service mark infringement; (3) unfair competition;

2    (4) infringement of Texas service mark; and (5) trade name and

3    service mark dilution.  SAC, ECF No. 38-1, Ex. 6, at 217-244.

4        The FAP includes the following relevant allegations:

5        "... I[n] 2011, Defendant Pools Management licensed
         Defendant Shan to use the name "Premier Pools and Spas"
         and began advertising Defendant Shan as its
6        "Dallas/Fort Worth location on its website."  FAP, ¶ 2.

7        "Defendants have taken advantage of Plaintiff's well
         known "Premier Pools" name and mark, and its reputation
8        for providing services of the highest quality, to cause
         Plaintiff to lose business and harm its valuable
9        reputation."  FAP, ¶ 2.

10       "For over 22 years, the Dodds have built a favorable
         and valuable reputation for themselves in this
11       geographic area under the trade name and service mark
         'Premier Pools' [.]"  FAP, ¶ 12.

12
         "In early 2012, Defendant Pools Management blanketed
13       the Dallas-Fort Worth market with advertising about
         'Premier Pools and Spas' and its operations in Dallas,
14       sending advertisements to homes all over the Dallas-
         Fort Worth area…"  FAP, ¶ 21.

15
         "Beyond all of the confusion that is being caused and
16       the business that is being lost, Plaintiff's reputation
         and goodwill are being seriously harmed because
17       Defendant Shan's work does not rise to the level of
         quality and professionalism that has defined
18       Plaintiff's business."  FAP, ¶ 34.

19       "A direct example of how Defendant Shan's work is
         tarnishing Plaintiff's reputation occurred in Flower
20       Mound, when a city official, as a courtesy, called
         Plaintiff to ask if a pool that had been built in the
21       area was Plaintiff's product, saying effectively that
         the pool that had been built was so deficient and in
22       violation of the relevant code provisions that it could
         not have been Plaintiff's work."  FAP, ¶ 34.

23
         "By using the name 'Premier Pools and Spas,' Defendant
24       Shan has unfairly competed with Plaintiff by
         appropriating Plaintiff's valuable goodwill and
25       business and injuring Plaintiff thereby.  FAP, ¶ 50.

26       On March 5, 2013, four days after receiving Plaintiff's

27   tender of the Texas state court case, Colony's adjuster, Becky

28   Vogel ("Vogel") notified Plaintiff's founder Paul Porter

                                4

("Porter") by email that Defendant was "in receipt of the notice of the lawsuit in Texas alleging trademark infringement. Colony will investigate this matter under a full and complete reservation of rights as afforded by the policy." Pl. Notice of Lodgment ("PNOL"), ECF No. 71-5, Ex. 2, ECF No. 71-7. Vogel also asked Porter for a copy of PPI's complaint against Plaintiff to investigate whether there was coverage under the Policy. Id. On March 15, 2013, Vogel told Porter that based on her initial review, it appeared PPI was alleging trade name and service mark claims that the Policy did not cover. Decl. of Rebekah Vogel ("Vogel Decl."), ECF No. 74-4, ¶ 4.

To investigate further, Vogel spoke with Plaintiff's counsel in the Texas Case, Leland de la Garza ("de la Garza"), on March 27, 2013, and went through each of the offenses listed in the definition of "personal and advertising injury" with him. Vogel Decl., ¶ 5. Vogel claims that de la Garza told her there was (1) no allegation in the lawsuit that Plaintiff used PPI's advertising ideas or that Plaintiff was infringing upon a copyright, trade dress or slogan; (2) that "Premier Pools" was not a slogan; and (3) the PPI lawsuit was purely a trade name and service mark infringement matter. Id. de la Garza testified that he recalls reviewing the claims with Vogel but does not recall her using the terms "offenses" and he does not believe he stated that "PPI was not alleging any claim that fit within the covered offenses." Decl. of Leland de la Garza ("de la Garza Decl."), ECF No. 75-5, ¶ 2.

The next day, Colony (via Vogel) formally denied Plaintiff's tender by letter. SAC, Ex. 8, ECF No. 38-1, at 247-256. Vogel

explained in her letter that trade name infringement and service mark infringement did not fit within the "Personal and Advertising Injury" definition under the Policy and that Plaintiff was not named as an insured on the Policy.  Id. Defendant also reserved the right to rely on the exclusion for "Infringement Of Copyright, Patent, Trademark Or Trade Secret" claims and reserved the right to assert that Plaintiff did not qualify as an insured.  Id.

The Texas Case went to trial in July 2013 and the jury found in favor of PPI, but awarded no damages.  Decl. of Paul Porter ("Porter Decl."), ECF No. 71-3, ¶¶ 6-7.  Plaintiff moved for, and was granted, a second trial.  Id.

B.   The Texas Case – The Second Trial

In July 2012, Plaintiff again tendered a coverage request to Defendant, and Defendant again declined.  Porter Decl., ¶ 7.  In September 2013, PPI brought substantially the same claims against Plaintiff and Shan Pools in its Second Amended Petition ("SAP").  PNOL, Ex. 1, ECF No. 71-6.  The only apparent differences in the claims are that the second claim is styled "Common Law Trademark and Service Mark Infringement," the fifth claim is styled "Trademark, Trade Name and Service Mark Dilution" and PPI added a claim for declaratory judgment.  Id.  Porter did not send the SAP to Vogel.  Vogel Decl., ¶ 9.

1.   Allegations And Testimony About Advertising

The SAP added new allegations that Plaintiff created a letter purportedly from the Better Business Bureau ("BBB") that Plaintiff used in its advertising and sales that falsely attributed BBB complaints to PPI to make it look like PPI

committed the actions giving rise to the BBB complaints.  SAP,
¶¶ 46-48.  Specifically, PPI alleged that Defendant Shan Johnson
wrote a bogus letter purporting to be from the BBB dated April 9,
2012.  Id.  In it, Johnson allegedly wrote that the BBB
erroneously named "Premier Pools and Spas of Allen Texas with the
complaint you have inquired about.  This complaint should have
been placed in the bureau of a smaller pool builder in
Lewisville, Texas also using the name Premier Pools.  We have
corrected this error and offer you our apologies for this
inconvenience."  Id., ¶ 46.  PPI alleged Shan Johnson had given
this letter to one or more of his sales personnel and told them
to show this to customers if they inquired about complaints filed
against Defendant Shan with the BBB.  Id.  PPI alleged that the
BBB denied authoring this letter.  Id., ¶ 47.  Finally, PPI
alleged that this letter was created to show to potential
customers to attempt to deflect inquiries about BBB complaints
against Shan Johnson to PPI, and "falsely make it look like the
offending conduct was committed by [PPI]."  Id.

PPI expert Karl D. Weisheit ("Weisheit") also wrote in his
November 2013 report that Plaintiff sent advertisements
throughout the Dallas-Fort Worth area about "Premier Pools and
Spas" that confused customers into thinking they were looking at
advertisements by PPI.  PNOL, Ex. 3.  For example, the
advertisements falsely claimed Plaintiff had operated in the area
since 1988 because PPI had operated in the area since 1989.  Id.
One of Plaintiff's representatives testified that customers cared
about how long the companies had been around.  PNOL Ex. 5, ECF
No. 71-10, Trial Transcr. Vol. 7, 247:24-248:13.

At the second trial in September 2014, PPI's representatives testified that their advertising relied almost entirely on their name and what it represented. PNOL Ex. 5, ECF No. 71-10, Trial Transcr. Vol. 7, 191:15-22; PNOL Ex. 6, ECF No. 71-11, Trial Transcr. Vol. 8, 53:13-20. Plaintiff's representatives also testified that they falsely showed pools built by Plaintiff's franchises outside the Dallas-Fort Worth area and tried to pass them off like they had been built in the Dallas-Fort Worth area. PNOL Ex. 5, Trial Transcr. Vol. 7, 135:6-15.

After the case closed and the parties prepared jury instructions, PPI's counsel argued that false advertising constituted independent tortious activity that was required for PPI's unfair competition claim. PNOL Ex. 7, ECF No. 71-12, Trial Transcr. Vol. 11, 37:18-38:2. The Court disagreed that false advertising had been tried, but stated "I'm not sure why we didn't try a false advertising claim because it's certainly present, but we didn't." Id., 44:4-9. The Court's jury instruction on PPI's unfair competition claim stated, in relevant part, that "[t]o prove unfair competition, it is not necessary to prove that Defendants intended to deceive the public, nor that anyone was actually deceived. However, either actual or probable deception must be shown, and a mere possibility of deception is not enough." Id., 74:8-18. During closing arguments, Plaintiff's counsel argued that Premier Pools is just defined as a "high quality pool, a first class pool." Id., 113:21-23. PPI's counsel responded in rebuttal that "[t]he deception, the clever thing is, well, if you advertise, if you spend more, you have a bigger website, you have search engine optimization, you

8

have the mark ... you can't advertise your way to a good reputation." Id., 157:17-23.

Recently in a deposition, Plaintiff's attorney from the Texas Case testified that PPI's only slogan was its name, Premier Pools.  PNOL Ex. 8, ECF No. 71-13, Depo. of Leland de la Garza, 52:12-53:11, 57:17-58:10.

## 2. Defendant's Involvement In The Second Trial

At the second trial, Plaintiff retained Veritas Advisory Group ("Veritas") as rebuttal damages experts.  Porter Decl., ¶ 12; SAC, ¶ 30.  Plaintiff, however, could not afford Veritas and asked Defendant to pay for Veritas's services.  Id. Defendant agreed to pay $25,000 for the expert's services and reserved its rights. Def. Not. of Lodgment of Exhibits ("DNOL"), ECF No. 74-8, Ex. 4, ECF No. 74-12.  One of Defendant's explicit reservations was that it

> continues its denial of coverage to Premier Pools on all the grounds previously asserted in its correspondence and its papers filed in the matter of *Premier Pools Management Corp. v. Colony Insurance Company*, Case No. 2:13-cv-02038-JAM-EFB (E.D. CA), including without limitations that Premier Pools is not an insured under the Colony policy, that the claims in the Underlying Action do not fall within the policy's "personal and advertising injury" coverage and that coverage for the claims are barred by various exclusions [.]

Id.  Defendant never sought reimbursement of these fees it paid. Porter Decl., ¶ 3.  In addition to paying for Veritas's services at the second trial, Defendant also had a representative attorney attend the second trial.  PNOL Ex. 9, ECF No. 14, Depo. of Ellen Fine ("Fine Depo."), ECF No. 71-14, 58:10-24.

In October 2014, the jury found Plaintiff liable to PPI for trademark and tradename infringement and unfair competition and

9

awarded $287,876.00 in damages for lost profits.  SAC, Exs. 10-11, at 259-78.  Plaintiff settled the Texas Case with PPI in April/May 2017 while the appeal of the judgment was pending.  See Porter Decl., ¶¶ 14-17; SAC, ¶ 77.

      C.   The Ninth Circuit Ruling And Remand

In May 2016, the Ninth Circuit reversed this Court's previous grant of Defendant's motion for summary judgment.  ECF No. 27 ("Ninth Circuit Ruling"), 649 Fed. Appx. 490 (9th Cir. 2016).  The Ninth Circuit found that the Policy documents were ambiguous as to which entities were insured and that the policy should be interpreted as a "layman would read it and not as it might be analyzed by an attorney or an insurance expert." Id. at 2 (internal quotation marks and citation omitted).  The Ninth Circuit concluded that, when the extrinsic evidence is considered, Plaintiff "sufficiently established that it was an insured so as to trigger a duty to defend under California law." Id., at 3 (internal citation omitted).  Accordingly, the Ninth Circuit held that "because there was potential coverage for the underlying suit, Colony had a duty to defend it." Id.  The Ninth Circuit, however, explicitly noted that "Colony raises other coverage defenses.  However, the district court confined its decision to the Declarations Certificates.  We decline to consider the additional coverage issues for the first time on appeal, leaving those issues for the district court on remand to consider in the first instance." Id., at 3-4.

///

///

///

III. OPINION

2    A.   <u>Law Of the Case – Ninth Circuit Ruling</u>

3    Plaintiff argues that because the coverage issue was briefed

4 extensively and argued by Defendant in the Ninth Circuit, the

5 holding from the Ninth Circuit Ruling should be read broadly and

6 that law of the case means that the Ninth Circuit has already

7 decided that Defendant had a duty to defend.  Pl. Mem. at 17; Pl.

8 Opp., at 2-4.

9    Defendant responds that Plaintiff has mischaracterized the

10 law of the case doctrine and the Ninth Circuit opinion.  Def.

11 Mem. at 19-20.  Law of the case does not apply to issues or

12 claims that were not actually decided.  <u>Mortimer v. Baca</u>, 594

13 F.3d 714, 720 (9th Cir. 2010) (internal citation and quotation

14 marks omitted).  In <u>Mortimer</u>, the district court granted summary

15 judgment on one issue, and the Ninth Circuit reversed, ruling

16 that the issue was for a jury to decide.  <u>Id.</u> at 718-19.  After

17 remand, the district court granted summary judgment a second time

18 on a different ground. <u>Id.</u>  The Ninth Circuit affirmed and ruled

19 that law of the case did not bar the district court from granting

20 summary judgment a second time. <u>Id.</u>  The Ninth Circuit explained

21 that, in applying law of the case, the statement in the initial

22 appellate opinion had to be read in the context of the entire

23 opinion.  <u>Id.</u> at 720.

24    Here, similarly, this Court previously granted Defendant's

25 summary judgment motion on the basis that Plaintiff did not

26 qualify as an insured entity under Defendant's policies.  The

27 Court did not address whether the Policy covered the claims

28 alleged in the Texas Case.  ECF No. 20.  The Ninth Circuit's

written opinion reversed this Court's ruling on whether Plaintiff qualified as an insured entity. Ninth Circuit Ruling at 3.

Plaintiff contends that the Ninth Circuit's statement that it declined to rule on additional coverage issues just means that the Ninth Circuit declined to delve into the numerous coverage issues raised by Defendant in its appellate opposition brief. Pl. Opp. at 3. Plaintiff asserts that the Ninth Circuit's statement does not mean the Ninth Circuit did not consider the potential for coverage because the Ninth Circuit Panel asked several questions about the potential for coverage at oral argument. Id. Plaintiff also claims that the Ninth Circuit found a potential for coverage and reserved "any additional actual coverage issues for the Court on remand." Id. at 4.

Defendant responds that if Plaintiff was correct in asserting that the Ninth Circuit summarily adjudicated the duty to defend, it would have instructed this Court to enter judgment for Plaintiff. Def. Reply, ECF No. 79, at 2. Defendant also contends that what the parties briefed on appeal and argued on appeal do not matter – what matters is what the Ninth Circuit did and did not decide. Id. The Court agrees.

The Ninth Circuit only reversed this Court's ruling that Plaintiff was not an insured under the Policy, since that was the only issue before it. The Ninth Circuit did not decide any other coverage issues and specifically stated that it was "leaving those issues for the district court on remand to consider…". This Court, therefore, must now address for the first time the other coverage issues raised by the parties in these motions.
///

1        B.    Duty To Defend

2        Words in an insurance policy must be interpreted as they are

3   understood by the average insured person, not as they may be

4   understood by an intellectual property lawyer.  See MacKinnon v.

5   Truck Ins. Exch., 31 Cal. 4th 635, 647-48 (2003).  An insurer's

6   duty to defend its insured against claims is triggered when the

7   facts alleged in the complaint create a potential for coverage.

8   Scottsdale Ins. Co. v. MV Transp., 36 Cal. 4th 643, 654 (2005).

9   This is regardless of the technical legal causes of action

10  pleaded by the third party.  Barnett v. Fireman's Fund Ins. Co.,

11  90 Cal. App. 4th 500, 510 (2001).  The duty to defend also exists

12  where extrinsic facts known to the insurer suggest the claim may

13  be covered.  Id. at 509-10.  If any facts fairly inferable from

14  the complaint, or otherwise known by the insurer, suggest a claim

15  potentially covered by the policy, the insurer's duty to defend

16  arises.  Scottsdale Ins. Co., 36 Cal. 4th at 654-55.

17       Where there is any issue of a potential for coverage and

18  therefore a duty to defend, the insurer must defend until it can

19  secure an adjudication that there is no such potential or duty.

20  Montrose Chem. Corp. v. Sup. Ct., 6 Cal. 4th 287, 295 (1993).  An

21  insurer must protect the insured's interests as if it were its

22  own and it may not deny a claim without thoroughly investigating

23  it.  Mariscal v. Old Republic Life Ins. Co., 42 Cal. App. 4th

24  1617, 1623 (1996) (internal citation and quotation marks

25  omitted).  Accordingly, an insurer must liberally construe claim

26  forms and the policy in favor of coverage; exclusions are

27  strictly interpreted against the insurer.  Id. (internal citation

28  omitted).  The duty to defend does not depend on whether facts

13

supporting a covered claim predominate or generate the claim and the labels applied to claims do not govern coverage. Pension Trust Fund v. Federal Ins. Co., 307 F.3d 944, 951 (9th Cir. 2002).

There are, however, limitations on the duty to defend. The duty is limited by the nature and kind of risk covered by the policy. La Jolla Beach & Tennis Club, Inc. v. Indus. Indem. Co., 9 Cal. 4th 27, 38 (1994). An insured may not trigger the duty to defend by speculating about extraneous facts regarding potential liability or ways in which the third party claimant might amend its complaint at some future date. Gunderson v. Fire Ins. Exch., 37 Cal. App. 4th 1106, 1114 (1995). In addition, the duty to defend is not extinguished until the insurer negates all facts suggesting potential coverage.[1] Scottsdale, 36 Cal. 4th at 655.

Once the insurer determines on the basis of the lawsuit and the facts known to it at that time that there was no potential for coverage, the insurer does not have a continuing duty to investigate or monitor the lawsuit to see if the third party later made some new claim not found in the original lawsuit. Gunderson, 37 Cal. App. 4th at 1117. But where information available at the time of tender shows no coverage and information available later shows otherwise, a duty to defend may then arise. Am. States Ins. Co. v. Progressive Cas. Ins. Co., 180 Cal. App. 4th 18, 26 (2009).

///

---

[1] Plaintiff argues that an insurer has a continuing duty to evaluate a potential for coverage all the way thru trial in the case. Pl. Opp. at 5. But Montrose, the case Plaintiff cites for this proposition, does not support this argument. 6 Cal. 4th at 299.

14

1              1.   Disparagement

2       Plaintiff claims that PPI's SAP alleged Plaintiff disparaged

3  PPI's products or services, thus triggering Defendant's duty to

4  defend under the Policy's "Personal and advertising injury"

5  provision.  Pl. Mem. at 18.  Plaintiff argues that, even if it

6  did not tender the SAP to Defendant, Defendant is charged with

7  knowledge of the SAP and what happened at the second trial since

8  it had a representative there.  Pl. Mem. at 15.  Plaintiff also

9  contends that even if the BBB allegations from the SAP are

10 alleged against Shan Johnson, they apply to Plaintiff because

11 PPI's causes of action were brought against both defendants.  Id.

12      Disparagement concerns damage to the reputation of products,

13 goods, or services.  Hartford Casualty Ins. Co. v. Swift

14 Distrib., Inc., 59 Cal. 4th 277, 288-89 (2014).  There are two

15 elements to a disparagement claim in the context of commercial

16 liability coverage: "A false or misleading statement (1) must

17 specifically refer to the plaintiff's products or business, and

18 (2) must clearly derogate that product or business.  Each

19 requirement must be satisfied by express mention or by clear

20 implication."  Id. at 291.

21      Here, Plaintiff points to PPI's allegations that Plaintiff

22 created a letter specifically stating that Plaintiff was accused

23 of falsely informing potential customers that a BBB complaint was

24 wrongly attributed to Plaintiff when it should have been

25 attributed to PPI.  Pl. Mem. at 19 (citing SAP, ¶¶ 46-48).

26 Plaintiff asserts that, since these allegations are extensions

27 and amendments to PPI's initial allegations of disparagement,

28 Defendant had a duty to defend these foreseeable allegations from

                                  15

the beginning.  _Id._

Plaintiff also contends that _Swift Distrib._ (relied on by Defendant), a case where no coverage was found for disparagement, does not apply because there was no alleged inferiority in the competing product in that case.  _Swift Distrib._, 59 Cal. 4th at 297.  In contrast, Plaintiff claims that the FAP alleges Plaintiff's inferior product is alleged to have been attributed to PPI.  Pl. Mem. at 22 (citing FAP, ¶¶ 2, 34, 61 ("By advertising such services in the same market for its 'Dallas/Fort Worth' location through its website and through mailed advertisements, Defendant Pools Management has actively contributed to Defendant Shan's dilution of Plaintiff's trade name and mark, and has done so knowingly since no later than July of 2011")).

Plaintiff also argues that _Total Call, Int'l, Inc. v. Peerless Ins. Co._ (also relied on by Defendant), 181 Cal. App. 4th 161, 170-71 (2010) does not apply.  Pl. Mem. at 22.  In _Total Call_, the California Court of Appeal found no disparagement because the gravamen of the relevant allegations against the insured were that the insured misstated its own products' capabilities, to the detriment of the entire industry and not the underlying plaintiff specifically.  181 Cal. App. 4th at 170-71.  Here, PPI alleged that Plaintiff misstated its capabilities to the detriment of PPI specifically.  FAP, ¶¶ 2, 19, 31-34, 61.

Plaintiff contends this case is more like _Tria Beauty v. Nat'l Fire Ins. Co._, No. C 12-05465, 2013 WL 2181649 (N.D. Cal. May 20, 2013).  Pl. Mem. at 22.  There, the key issue was whether the policy language included coverage for claims that sounded in

16

disparagement in the broader sense of injurious falsehoods, as opposed to a narrower category of claims that met the pleading requirements for trade libel. Tria Beauty, 2013 WL 2181649, *5. In denying summary judgment for the insurer, the Northern District of California stated that the term "disparages" in the policy should be resolved by construing the language in a way that is consistent with the plaintiff's objectively reasonable expectations, and in case of doubt, against the insurers. Id. The Northern District of California cited Travelers Prop. Cas. Co. v. Charlotte Russe Holding, Inc., 207 Cal. App. 4th 969, 976-80 (2012) in holding that "the disparagement policy language at issue here covered implied disparagement claims based on statements about the insured's own products." Id. Plaintiff argues that, similarly, its alleged advertising about its own products—that it was established in 1988 and that it built certain pools in the Dallas Fort-Worth area—impliedly disparaged PPI. Pl. Mem. at 23 (citing PNOL Ex. 5, Transcr. Vol. 7, 135:6-15; PNOL Ex. 7, Transcr. Vol. 11, 97:21-99:21).

Defendant counters that there was no implicit disparagement in the Texas Case because the PPI lawsuit only alleged that Plaintiff copied PPI's good name and traded on its good reputation. Def. Mem. at 11. In support, Defendant relies on cases that the California Supreme Court cited in Swift. Def. Mem. at 12. In Aetna Casualty & Surety Co. v. Centennial Ins. Co., 838 F.2d 346 (9th Cir. 1988), the Ninth Circuit found the insurer had no duty to defend under its trade libel coverage provision because disparagement claims did not arise from allegations that the policyholder had "palmed off" the

competitor's products as its own.  838 F.2d at 349, 351.  The

underlying complaint did not allege any publication which

directly cast aspersions on the underlying plaintiff's product or

business.  Id.  In Homedics, Inc. v. Valley Forge Ins. Co., 315

F.3d 1135 (9th Cir. 2003), the Ninth Circuit found that the

insurer had no duty to defend because an entity's imitation of a

product design did not constitute disparagement.  315 F.3d at

1137, 1142.  In Microtec Research v. Nationwide Mut. Ins. Co., 40

F.3d 968, 972 (9th Cir. 1994), the Ninth Circuit ruled that the

insurer had no duty to defend based on disparagement because the

underlying claims were only that Microtec palmed off the

underlying plaintiff's compilers and not that Microtec made a

false or injurious statement about the quality of the underlying

plaintiff's compilers.  40 F.3d at 972.

Defendant also argues that, just like all the aforementioned

Ninth Circuit cases and Swift Distrib., PPI here did not allege

that Plaintiff specifically referred to PPI in its advertisements

or specifically disparaged PPI's products or services.  Def. Mem.

at 12.  PPI did not allege Plaintiff's advertisements referred to

PPI and only alleged that Plaintiff misappropriated its name,

which caused confusion.  Id.  Accordingly, Defendant argues it

had no duty to defend under a disparagement theory.  Id.

Defendant adds that coverage under the disparagement provision

does not arise from PPI's alleged damage to its reputation from

consumers thinking PPI did the inferior work.  Def. Mem. at 13.

Defendant further contends that Plaintiff's reliance on Tria

Beauty is misplaced because it predated Swift Distrib., which is

binding on this Court's application of California law as a

California Supreme Court holding.  Def. Mem. at 13 (citing Aceves
v. Allstate Ins. Co., 68 F.3d 1160, 1164 (9th Cir. 1995)).
Defendant also notes that Tria Beauty has questionable persuasive
value because it followed Charlotte Russe, which Swift Distrib.
specifically addressed and disapproved of.  Id.; Tria Beauty,
2013 WL 2181649, * 6; Swift Distrib., 59 Cal. 4th at 295.

Defendant asserts that, as a general matter, the new BBB
allegations from the SAP did not trigger a duty to defend
because: (1) Plaintiff never tendered the SAP to Defendant;
(2) the BBB allegations were made against Shan Johnson and not
Plaintiff; and (3) the claim based on the BBB letter would fall
within the Policy exclusions for "material published with
knowledge of falsity" and "knowing violation of rights of
another."  Def. Mem. at 21-22.  Defendant mentions that when it
denied coverage in March 2013, it told Plaintiff to forward any
information which they thought would be relevant to policy
coverage.  Id. at 22.  But Plaintiff never forwarded the SAP or
tendered it, or even attached it in this case until Plaintiff's
summary judgment motion.  Id.  And the Second Trial that
Defendant's representative attended did not mention the BBB
allegations.  Id.  In support of its argument, Defendant cites
Travelers Casualty & Surety Co. v. Employers Ins. Of Wasau, 130
Cal. App. 4th 99 (2005), where the California Court of Appeal
found the insurer had no duty to defend because facts giving rise
to potential coverage were only asserted in the fourth amended
complaint, which was never tendered.  Id.

Finally, Defendant reasons that the BBB letter, if bogus,
could not have been written without knowing it was false.  Def.

19

Mem. at 22.  The BBB allegations would fall within the "Knowing Violation Of Rights Of Another" and "Material Published With Knowledge Of Falsity" Policy exclusions.  Id.

Plaintiff counters that the BBB allegations establish a potential for coverage under the Policy because the alleged conduct involved disseminating damaging information (the BBB complaint) against PPI, which "directly cast aspersions" on PPI's business.  Pl. Opp. at 16.  But the BBB allegations do not state that Plaintiff casted aspersions on PPI's business.  Plaintiff also fails to address the Ninth Circuit cases about disparagement that Defendant cited and fails to address Defendant's claim that Tria Beauty relies on law that has been disapproved of by the California Supreme Court.  See id.

The Court finds that the FAP did not give rise to coverage under the disparagement provision – the FAP simply alleges that Plaintiff traded on PPI's strong reputation and name.  It does not allege that Plaintiff directly casted aspersions on PPI's name or products or that Plaintiff made false or injurious statements about the quality of PPI's products.  The disparagement provision does not apply.  See Swift Distrib., 59 Cal. 4th at 296; Aetna, 838 F.2d at 349, 351; Homedics, 315 F.3d at 1137, 1142; Microtec, 40 F.3d at 972.

The Court further finds that the BBB letter allegations from the SAP did not trigger a duty to defend.  Defendant did not have a duty to further investigate coverage until Plaintiff submitted a new tender.  See Upper Deck, 358 F.3d 608, 613 (9th Cir. 2004).  Plaintiff alleged it asked and was refused coverage for defense of the Second Trial in the SAC, but it does not say when or what

information it sent to Defendant.  See SAC, ¶ 31.  And Plaintiff

did not rebut Defendant's contention that it never received the

SAP until the recent depositions in this case.  See Pl. Opp. at

17, n.66.  The Court finds that Defendant's duty to defend was

not triggered under any potential disparagement allegations.

### 2.  Advertisement

Plaintiff claims Defendant alternately had a duty to defend

under the Policy's "use of another's advertising idea in your

'advertisement'" provision because PPI alleged that Plaintiff's

use of the name "Premier Pools" in advertisements harmed it.  Pl.

Mem. at 19.

Copying a competitor's product and selling that product does

not constitute use of an advertising idea for an insurer's duty

to defend.  Oglio Entm't Grp., Inc. v. Hartford Cas. Ins. Co.,

200 Cal. App. 4th 573, 584-85 (2011).  Even where an insured

infringes on a patent in their advertisement, this does not

constitute use of another's advertising idea.  Mez Indus., Inc.

v. Pac. Nat'l Ins. Co., 76 Cal. App. 4th 856, 872 (1999).  But

when the infringement deals with an advertising idea itself, that

constitutes use of an advertising idea.  Hyundai Motor Am. v.

Nat. Union Fire Ins. Co. of Pittsburgh, Pa., 600 F.3d 1092, 1101-

1102 (9th Cir. 2010) (found advertising idea existed where the

infringement dealt with a way to solicit customers).

Plaintiff points out that PPI officials testified at the

Second Trial that PPI's entire advertising scheme was to use its

name "Premier Pools" by yard signs and referrals because the name

was everything.  Pl. Mem. at 19.  Plaintiff also notes that the

FAP alleges Plaintiff took advantage of PPI's well known "Premier

Pools" name and mark, and its reputation for providing services of the highest quality. Pl. Mem. at 20 (citing FAP, ¶ 2). Plaintiff further argues that coverage arises from Plaintiff falsely marketing that it was established in Texas in 1989 and trying to exploit the fact that PPI came into the Dallas Fort-Worth area in 1989. Id.

Defendant counters that Plaintiff's infringement of PPI's *name* "Premier Pools" was not the use of another's advertising *idea*. Def. Mem. at 14-15. Defendant specifically argues that "California courts and the Ninth Circuit have interpreted "advertising idea" based on its plain meaning—an *idea* used for advertising. 'Advertising idea' does not mean a company's name or product itself ..." Id. at 14. The Court agrees and finds that "Premier Pools" is a *name*, and not an advertising *idea*. The Court finds that PPI did not allege that Plaintiff stole an advertising idea, e.g., a special computer program designed to track customer preference data. The "use of an advertising idea" Policy coverage provision does not apply.

### 3. Slogan Infringement

Plaintiff next contends that Defendant's duty to defend was triggered by potential slogan infringement claims based on the facts alleged in the FAP and SAP. Pl. Mem. at 20.

In Street Surfing, LLC v. Great American E&S Ins. Co. 776 F.3d 603, 608 (9th Cir. 2014)[2], the Ninth Circuit stated that the definition of slogan is "a brief attention-getting phrase used in advertising or promotion or a phrase used repeatedly, as in

[2] Plaintiff cites to Street Surfing, 752 F.3d 853 (9th Cir. 2014) in its moving papers, but that opinion was explicitly amended and superseded by Street Surfing, 776 F.3d 603. Pl. Mem. at 21.

promotion." (citing Palmer v. Truck Ins. Exch., 21 Cal. 4th 1109 (1999)). The Ninth Circuit also noted that there may be instances where the name of a business, product, or service, by itself, is also used as a slogan. Id. (citing Palmer, 21 Cal. 4th 1109). The Ninth Circuit acknowledged that the Eighth Circuit in Interstate Bakeries Corp. v. OneBeacon Ins. Co., 686 F.3d 539, 546 (8th Cir. 2012) mentioned that "Nature's Own" could serve as a slogan, even though it was also a name. In finding no duty to defend, however, the Ninth Circuit cited Interstate Bakeries Corp. to explain that the underlying plaintiff never suggested that the insured ever used "Streetsurfer" as a slogan. Id. at 609. The Ninth Circuit concluded that the duty to defend was absent because the plaintiff used "Streetsurfer" as a recognizable brand name to identify his products, not as a phrase promoting that brand. Id.

In Palmer v. Truck Ins. Exch., 21 Cal. 4th 1109 (1999), the California Supreme Court also held that a trademarked name was not a slogan. The insured was sued for infringing the mark "Valencia" in its housing project known as "Valencia Village Apartments." Id. at 1112-13. The California Supreme Court rejected the contention that the conduct constituted slogan infringement because "the infringing use of a trademark that is merely a word in a phrase used as a slogan is not the same as the infringing use of a slogan." Id. at 1120.

Plaintiff contends that the name "Premier Pools" is an advertising slogan since it is the phrase that Plaintiff and PPI both used for promoting the brand Premier Pools. Pl. Mem. at 21. Plaintiff cites from de la Garza's closing argument in the Texas

23

Case to support this argument.  Pl. Mem. at 21.

Plaintiff also argues that "Premier Pools" is both a name and a slogan because it is a brief, attention-getting phrase used in advertising or promotion.  Pl. Opp. at 5.  Plaintiff attempts to distinguish Palmer by claiming it only determined that "Valencia" is a word and not a slogan, and cannot be applied more broadly.  Id. at 6.  Plaintiff cites Hudson Ins. Co. v. Colony Ins. Co., 624 F.3d 1264, 1265 (9th Cir. 2010) to argue that slogan infringement need not be a specific pleaded cause of action in a complaint to trigger coverage.  Id.  In Hudson, the complaint listed causes of action for trademark infringement, trademark counterfeiting, trademark dilution, unfair competition, and deceptive acts and practices.  624 F.3d 1264.  The insured in Hudson successfully asserted that the phrase "Steel Curtain" raised the potential for coverage for trade dress infringement and slogan infringement, even though neither was expressly pled.  Id. at 1270.  In affirming a grant of partial summary judgment to the insured, the Ninth Circuit noted that "Steel Curtain" was a brief attention-getting phrase used to promote fan loyalty to the Pittsburgh Steelers and to a subset of Steelers players.  Id. at 1268.  The Ninth Circuit also looked favorably on the analysis from Cincinnati Ins. Co. v. Zen Design Grp., Ltd., 329 F.3d 546, 550, 556 (6th Cir. 2003), where the Sixth Circuit ruled that even though it was doubtful whether WEARABLE LIGHT could legally be a slogan, the complaint's failure to refer to WEARABLE LIGHT as a slogan and its failure to include slogan infringement in the complaint did not alleviate the duty to defend.  Id. at 1268-69.

Plaintiff further contends that like "Steel Curtain" in

24

Hudson, "Quality Vehicle Modifier" (an automobile safety certification and product feature) in Ultra Coachbuilders, Inc. v. Gen. Sec. Ins. Co., No. 02 CV 675, 2002 WL 31528474, *2-3 (S.D.N.Y. Jul. 15, 2002), and "fullblood" (a term of art within the cattle industry) in Am. Simmental Ass'n v. Coregis Ins. Co., 75 F. Supp. 2d 1023, 1030 (D. Neb. 1999), "Premier Pools" is also a slogan. Pl. Opp. at 8. Plaintiff contends that "Premier Pools" has a meaning to the target audience – homeowners interested in a luxurious backyard pool. Id. Plaintiff claims that the target audiences appreciate the implications of the phrase suggesting they are purchasing an attractive product, like Wearable Light in Zen Design. Id. Plaintiff also asserts that "Premier Pools" is both a name and a slogan since the phrase indicates "first" or "best" or "leader," which embodies the idea itself. Plaintiff's alleged infringement of the phrase thus may contain an idea, slogan, and a name, all in one. Pl. Opp. at 11. Notably, these characterizations of the phrase "Premier Pools" are not alleged in the FAP or SAP. See Pl. Opp. at 8, 11.

Plaintiff also points out that the Dodd Family (founders of PPI) did not use "Dodd's Pools" as their business's names, but the slogan and idea "Premier Pools." Pl. Opp. at 11. Similarly, Porter did not call Plaintiff "Porter's Pools" or "Shan's Pools" for Shan Johnson in Texas. Id. Accordingly, Plaintiff claims that even if it is doubtful whether "Premier Pools" is a slogan, Defendant was on notice about a slogan infringement claim and should have adhered to its duty to defend. Id.

To support its argument, Plaintiff cites A Touch of Class Imports Ltd. V. Aetna Casualty Ins. Co., 901 F. Supp. 175, 177

25

(S.D.N.Y. 1995), where "Touch of Class" served as both a title and a slogan.  Pl. Opp. at 10.  The California Supreme Court in Palmer, 21 Cal. 4th at 655-56, however, called this interpretation dicta and said "we do not find the decision to be persuasive precedent because the court failed to consider the policy language as a whole and provided no analysis whatsoever."

Defendant counters these arguments by pointing out that PPI's trademarked name was not simultaneously a slogan and that PPI did not allege Plaintiff used "Premier Pools" as a slogan. Def. Mem. at 16-17.  PPI's FAP and SAP only alleged that "Premier Pools" was a name and mark that Plaintiff infringed.  Id. (citing FAP).  Further, nobody from PPI testified that Premier Pools was a slogan or advertising idea, but that the name was "everything" because of what it indicated about PPI's business and reputation. Id. at 24-25 (citing PNOL, Ex. 6, Transcript Vol. 8, 53:13-20.) As a result, no duty arose because speculating about facts not found in the complaint (even if they might naturally be supposed to exist along with the alleged facts) is insufficient to give rise to an insurer's duty to defend.  Def. Reply at 4 (citing Advent, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 6 Cal. App. 5th 443, 460 (2016) and Friedman Prof. Mgmt. Co., Inc. v. Norcal Mut. Ins. Co., 120 Cal. App. 4th 17, 34-35 (2004)).

Defendant distinguishes Hudson by arguing that "Steel Curtain" is not the name of the team and here, "Premier Pools" is the name of the Texas pool company.  Def. Reply at 3.  Defendant also emphasizes that Street Surfing does not help Plaintiff because the Ninth Circuit in that case held that "Streetsurfer" was not a slogan, since the underlying infringement complaint

26

alleged only that the plaintiff used "Streetsurfer" as a recognizable brand name to identify his products. Id. (citing 776 F.3d at 609.) Defendant distinguishes Zen Design by pointing out that the case did not apply California law and that the court found WEARABLE LIGHT to be a slogan partially because it was not the actual name of the product. Id. at 4 (citing 329 F.3d at 556-57).

The Court agrees with Defendant's assertion that "Premier Pools" is more like the phrases at issue in the following cases, where the respective courts found those phrases were names and not slogans: Palmer, 21 Cal. 4th at 1120 (where "Valencia" was a name and not a slogan), Aloha Pac., Inc. v. Cal. Ins. Guarantee Ass'n, 79 Cal. App. 4th 297, 317 (2000) ("Rusty's Island Chips" and "Island Chips" were trademarks and not slogans), and N. Coast Med., Inc. v. Hartford Fire Ins. Co., No. 13-CV-03406, 2014 WL 605672, *5-6 (N.D. Cal. Feb. 17, 2014) (finding "THERA-PUTTY" was a product name and not a slogan). Def. Mem. at 16.

The FAP and SAP do not allege facts suggesting a potential slogan infringement claim. Like the underlying complaint in Street Surfing, the FAP and SAP only allege that Premier Pools is a valuable brand that Plaintiff unfairly used. 776 F.3d at 608-09. To find Defendant had a duty to defend, the Court would have to improperly presume facts not alleged in the complaint. See Advent, Inc., 6 Cal. App. 5th at 460; See also Gunderson, 37 Cal. App. 4th at 1114 ("An insured may not trigger the duty to defend by speculating about extraneous 'facts' regarding potential liability or ways in which the third party claimant might amend its complaint at some future date."). The Court will not do so.

The Court finds Defendant did not have a duty to defend a slogan infringement claim that PPI did not bring.

### 4. Trade Dress Infringement

Plaintiff argues Defendant had a duty to defend Plaintiff because of a potential trade dress infringement claim, with "trade dress" defined as a product's "total image" or "overall appearance" and "may include features such as size, shape, color or color combinations, texture, graphics or even particular sales techniques." Pl. Mem. at 23 (citing Harland Co. v. Clarke Checks, Inc., 711 F.2d 966, 980 (11th Cir. 1983)). Plaintiff claims the FAP gave Defendant notice of a potential trade dress claim because of allegations of consumer confusion based on Plaintiff's use of a "Premier Pools" logo in marketing materials and also because de la Garza testified that he was prepared to defend a trade dress infringement claim. Pl. Mem. at 16, 23.

To support its argument, Plaintiff also cites a part of Lanham Act Section 43(a), which states that a trade dress cause of action can arise from use in commerce of "any word, term, name, symbol, or device, or any combination thereof" that "misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another's person's goods [.]" Pl. Opp. at 17-18.

Defendant contends that it does not matter whether de la Garza was prepared to defend against a trade dress claim. Def. Mem. at 26. de la Garza conceded that PPI did not plead a trade dress claim and that is because trade dress refers to the design or packaging of a product that may acquire a distinctiveness which serves to identify the product with its manufacturer or

source.  Id. (citing TraFix Devices, Inc. v. Mktg. Displays, Inc., 532 U.S. 23, 28 (2001)).  PPI also did not allege that the design of its pools was distinctive or that Plaintiff copied that design or PPI's logo.  Id.  Defendant also reiterates that the duty to defend is not based on speculation about what claims the plaintiff might possibly bring since that would effectively remove the limits on the duty to defend.  Id.

Defendant further contends that Plaintiff mischaracterizes Section 43(a) of the Lanham Act, which is not just about trade dress, but is the main intellectual property and false advertising federal statute (citing POM Wonderful LLC v. Coca-Cola Co., 134 S. Ct. 2228, 2233 (2014)).  Def. Reply at 8-9. Defendant points out that this mischaracterization is important because even if Plaintiff engaged in false advertising in violation of the Lanham Act, this does not necessarily make its conduct a trade dress violation.  Id.

The Court finds that the FAP did not contain potential trade dress allegations or facts giving rise to such claims.  PPI made no allegations that Plaintiff copied its designs and so Defendant was not on notice that a trade dress claim was possible.

5.  Libel Or Slander

Finally, Plaintiff argues that Defendant had a duty to defend because the FAP and/or SAP contain potential libel allegations.  Pl. Mem. at 23-24.  Libel means a "false and unprivileged publication by writing… which exposes any person to hatred contempt, ridicule, or obloquy, or which causes [any person] to be shunned or avoided, or which has tendency to injure [them] in his occupation."  Cal. Civ. Code § 45.  Plaintiff

29

contends that potential libel claims arise from PPI's allegations that it lost business because of Plaintiff falsely advertising that Plaintiff was PPI. Pl. Mem. at 23-24. However, PPI did not allege that Plaintiff specifically published any negative statements about PPI. See id. Plaintiff also fails to provide any authority in support of this argument.

Plaintiff further asserts that potential libel claims arise from the SAP's allegations that Plaintiff wrote the false BBB letter that falsely attributed shoddy work to PPI, causing potential customers to shun or avoid PPI. Pl. Mem. at 23-24. But, as explained above, Defendant was not liable for coverage for the SAP's BBB allegations. In addition, Plaintiff has not cited any authority to support a finding that libel claims arise from the BBB allegations. See id. Accordingly, there was no potential for coverage and no duty to defend on any potential libel claim.

The Court does not find potential for coverage based on any of the provisions in the parties' insurance agreement relied upon by Plaintiff. Because Defendant has shown that there was no potential for coverage under the Policy, the Court finds it had no duty to defend the Texas Case and summary judgment is granted for Defendant on Plaintiff's First Cause of Action for Declaratory Relief and Second Cause of Action for Breach of Insurance Contract Duty to Defend.

C.    Other Causes of Action

Defendant argues that because it has no duty to defend the Texas Case, it has no duty to indemnify the judgment either. Def. Mem. at 27 (citing Imperium Ins. Co. v. Unigard Ins. Co., 16

F. Supp. 3d 1104, 1116 (E.D. Cal. 2014) ("where there is no duty to defend, there cannot be a duty to indemnify") (citing and quoting <u>Certain Underwriters at Lloyd's of London v. Sup. Ct.</u>, 24 Cal. 4th 945, 958 (2001))).  The Court agrees and finds that because Defendant had no duty to defend, it had no duty to indemnify.  Because the Court finds Defendant lacked a duty to defend and a duty to indemnify, Plaintiff's claims for breach of the covenant of good faith and fair dealing and for punitive damages must also be dismissed as a matter of law. Def. Mem at 30-34. Defendant's motion for summary judgment on these causes of action is granted.

## IV.   ORDER

For the reasons set forth above, the Court GRANTS Defendant's Motion for Summary Judgment and DENIES Plaintiff's Motion for Partial Summary Judgment.  The dates set for the pretrial conference and trial are vacated.

IT IS SO ORDERED.

Dated: July 25, 2018

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE